# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:17-CR-117 JVB |
| JAMES RANOCHAK, et al. | |

## OPINION AND ORDER

This matter is before the Court on Defendant James Ranochak's second motion to suppress (DE 49), in which he seeks to exclude statements he made and items law enforcement officers seized at his home on September 11, 2013. The Court held an evidentiary hearing on April 17, 2019. With the completion of post-hearing briefing on May 24, 2019, the matter is now ripe for decision.

**A.      Background**

On the morning of September 11, 2013, Ranochak, a medical doctor, was at his home in Fort Wayne, Indiana. Several law enforcement officials came to his door, were admitted, spoke with him, and searched his house. He contends his statements to the law enforcement personnel must be suppressed because he was in custody when he made them and had not been given *Miranda* warnings. He further maintains that items seized from his home that morning must be suppressed because they were the product of an illegal, warrantless search. Although he signed a consent form authorizing the search of his house and car, he argues that his consent was not voluntary and therefore invalid.

B.  **Summary of Tucker Testimony**

According to Jennifer Tucker, a diversion investigator with the Drug Enforcement Agency ("DEA"), on September 11, 2013, at around 10:00 am, she went to Ranochak's home along with a Food and Drug Administration special agent Michael Thalji, DEA agent Michael Foldesi, and DEA task force officer Peter Mooney.  She was not armed, but the others were.  Four people went to the house that day because they intended to ask for consent to search and additional people would be needed for the search.

Tucker and Thalji approached the front door while the other two officers waited in the driveway.  They knocked on the front door or rang the door bell, or possibly both.  Ranochak answered the door, dressed for work.  After showing him her ID and introducing herself, Tucker asked him if he would be willing to answer some questions concerning his DEA registration.  He was told that talking to them was voluntary.  Ranochak answered "yes," and invited all four members of the team inside, leading Tucker and Thalji to the living room, while the others waited in a hallway. He appeared to Tucker to be alert.

Ranochak spoke with Tucker and Thalji in the living room for about an hour.  To initiate the conversation, Tucker asked Ranochak about his health because she noticed he was limping.  He told her he was in pain from hip bursitis and that he took vitamin supplements and medication for diabetes.  He never told Tucker that the pain was affecting his ability to think clearly.   He then "launched into . . . information about his medical practice."  (Tr. 10, l. 19–20.)

At no point during the encounter were any weapons drawn.  All participants used a conversational tone.  Ranochak was never threatened or told he must speak with Tucker and

2

Thalji. Ranochak never asked the team to leave. Ranochak was never told that they had a warrant or could get one, but was told that there was a warrant for his office.

As Tucker remembered, at the conclusion of the interview, Ranochak was asked once if he would consent to a search of his home. He was told that the search was completely voluntary and that the team could stop at any time. He verbally agreed to the search and signed a written consent form which stated that he had been asked to permit DEA agents to search his "house and car"—words that he wrote on the form— that he had not been threatened or forced in any way, and that he freely consented to the search. He then escorted two of the officers around the residence, while Tucker and Thalji searched the kitchen. He was pleasant and talkative during the search. He never asked the searchers to stop or leave his house.

When the search concluded, Ranochak was given a DEA receipt for the items that were being taken from his house. The team left after Tucker arranged to meet him at the North Avenue Pharmacy, where his office was located, because he wanted to show her some records. Ranochak drove himself to the pharmacy.

C.     **Summary of James Ranochak Testimony**

Ranochak was the only other witness at the hearing. He testified that on September 11, 2013, he did not get to his office at the usual time of 10:00 am because he was passing a kidney stone and had a lot of blood in his urine. He was in pain from the kidney stone and his hip, knee, and back. He was sweating and short of breath and had not had anything to eat since the night before.

Ranochak's memory is that his wife answered the door and called him down, telling him

3

that the DEA was there. He met them at the front door while they were still outside. Tucker told him they were raiding his office and that she wanted to come into his house and look around. He understood that the warrant for the office search covered the search of his house.

Ranochak didn't think he had a choice to deny Tucker entrance to his house. He saw guns on the three officers and was told that they had guns because he had a registered gun. He says they told him they wanted to search his house while Tucker was standing at the front door. He did not feel free to leave or to tell the team to leave with three or four armed officers in his living room. He said he started babbling when he was seated in the living room with agent Tucker because "my brain was fried." (Tr. 67 at 4–5.) When they asked him to walk them through the house, he told them he had nothing to hide. He maintains that he did not sign the consent to search form until after the search was completed. He didn't understand that he could refuse to sign it. When asked whether he had told the team to get out of his house, first he said he didn't remember, then that he was afraid to, and finally that he thought he did tell the officers he was walking around with that he wished they would leave. He said Tucker asked him many times for permission to search his home, claiming that she had to repeat the question because he didn't understand it. He said that after the team had left and after he had eaten something and finished passing the kidney stone, he felt better and was able to drive himself to the pharmacy.

D.  Discussion

(1)  *Miranda Warnings*

A suspect is in custody and entitled to *Miranda* warnings if restrained to a degree associated with a formal arrest. *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002).

4

The custody determination must be based on how a reasonable person in the suspect's situation would understand his circumstances. *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004). The police are not required to anticipate the frailties or idiosyncracies of every person they question. *Id.* Factors to be considered include whether the encounter took place in a public place, whether the suspect consented to speak with the officers, whether he was informed he was not under arrest and was free to leave, whether he was moved to another area, whether there was a threatening presence of weapons or physical force, and whether the officers' tone of voice was such that their requests were likely to be obeyed. *United States v. Thompson*, 496 F.3d 807, 810–11 (7th Cir. 2007).

In the instant case, Ranochak spoke with the team in his own home, with his wife in the house. He never contradicted Tucker's testimony that he invited the team into the house, saying only that he didn't think he had a choice. While he was not told explicitly that he was not under arrest and free to leave, he was told, when Tucker was on his doorstep, that speaking with her was voluntary, after which he spoke with her and Thalji for about an hour. Although three team members were armed, no weapons were drawn. No voices were raised. Ranochak was never moved to another area. The Court concludes, after considering the totality of the circumstances, that Ranochak was not in custody when he spoke with Tucker and other members of the team on September 11, 2013. Accordingly no *Miranda* warnings were required and the statements he made that day will not be suppressed.

**(2)** *Consent to Search*

The government bears the burden of proving that consent to a warrantless search was

freely and voluntarily given. To determine whether consent was voluntary, a court must look to the totality of the circumstances, examining factors such as the age, education, and intelligence of the consenting individual, whether he was advised of his constitutional rights, how long he was detained before consenting, whether the consent was immediate or given only after repeated requests, whether there was physical coercion, and whether the individual was in custody at the time. *United States v. Hicks*, 539 F.3d 566, 570 (7th Cir. 2008).

Nothing about Ranochak's age, education, or intelligence calls into question the voluntariness of his consent. Although there was no testimony as to his age, he is clearly neither a minor nor of such advanced age as to suggest he did not understand that he was being asked to consent to a search. Concerning his education and intelligence, the fact that he was a medical doctor speaks for itself. He had conversed with Tucker and Thalji for only about an hour when they asked if they could search the house. The Court disbelieves his testimony that he had to be asked repeatedly if he would consent to a search, which is at odds with his testimony that when he was asked, he replied that he had nothing to hide.

The Court also disbelieves Ranochak's testimony that he was in such excruciating physical pain that he didn't know what he was saying or signing. It is not credible that he would have continued to converse with Tucker and Thalji for an hour without informing them of such severe distress. He had the perfect opportunity to mention his kidney stone when Tucker noticed his limp and asked if he was in pain, but he failed to do so. Also, it is highly unlikely that if he truly were suffering from such severe pain during the team's presence in his house, he would have made arrangements with Tucker before they left to meet her at his office a short while later to show her some files.

6

Considering the totality of the circumstances, the Court finds, by a preponderance of the evidence, that Ranochak freely and voluntarily consented, both orally and in writing, to the search of his house.

**E.     Conclusion**

For the foregoing reasons, Defendant James Ranochak's motion to suppress the statements he made and the evidence seized at his house on September 11, 2013 (DE 49), is **DENIED**.

SO ORDERED on June 20, 2019.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge